UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>                                    Plaintiff,<br><br>v.<br><br>Jose Luis Garcia-Morales,<br><br>                                    Defendant. | Case No.:  3:15-cr-01463-GPC-1<br><br>**ORDER GRANTING MOTION TO DISMISS INDICTMENT DUE TO INVALID DEPORTATION**<br><br>[ECF No. 33] |

Before the Court is Defendant Jose Luis Garcia-Morales' ("Defendant") October 16, 2015 motion to dismiss his indictment due to invalid deportation. Def. Mot., ECF No. 33. The motion has been fully briefed. Pl. Resp., ECF No. 34; Def. Reply, ECF No. 35. Upon consideration of the moving papers and the applicable law, the Court hereby **GRANTS** Defendant's motion to dismiss Count 1 of the indictment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a 60-year-old native and citizen of Mexico who became a legal permanent resident of the United States in 1989. On January 28, 1993, Defendant was convicted under Cal. Penal Code § 288(a) for sexually molesting his 13-year-old niece. *See* Nov. 15, 2004 BIA Order ("First BIA Order") 2, Def. Mot., Ex. C. Following a guilty plea, Defendant served 8 months in prison and was registered as a sex offender. *Id.*; *see also* Def. Mot., Ex. L. On January 20, 2004, the legacy Immigration and Naturalization

Service ("INS") initiated removal proceedings against Defendant based on the 1993 conviction, which was an aggravated felony. *See* Notice of Removal Proceedings, Def. Mot, Ex. A.

Defendant then requested § 212(c) relief from deportation before the Immigration Judge ("IJ"). March 31, 2004 IJ Order ("First IJ Order") 2, Def. Mot., Ex. B.[1] On March 31, 2004, the IJ issued an oral decision granting Defendant discretionary relief under § 212(c). *See generally id.* The IJ found that unusual or outstanding equities existed favoring the grant of a waiver, including the death of one of Defendant's children while in the custody of the state foster care system after Defendant's children were taken into state custody following his arrest for child molestation, the Defendant caring for another of his children with learning disabilities, and the Defendant caring for a third child with

---

[1] Formerly, § 212(c) of the Immigration and Naturalization Act ("INA"), codified at 8 U.S.C. § 1182(c) (1985), provided that "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . ." § 212(c) was interpreted to authorize any permanent resident alien to apply for discretionary waiver from deportation. *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1053 (9th Cir. 2003) (citing *Ayala–Chavez v. INS*, 944 F.2d 638, 640 n. 2 (9th Cir. 1991)).

In 1996, § 212(c) was repealed by Congress under the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which replaced § 212(c) with the new procedure of cancellation of removal, under which persons who had been convicted of an aggravated felony are ineligible for such relief. *Id.* (citing IIRIRA, Pub. L. No. 104–208 Division C, § 304(b), 110 Stat. 3009–546, 3009–597 (1996) (repealing § 212(c)); § 340(a)(3), 110 Stat. 3009–594, codified at 8 U.S.C. § 1229b(a)(3) (2001) (prohibiting cancellation of removal for persons convicted of aggravated felonies)). However, in *INS v. St. Cyr*, 533 U.S. 289 (2001), the Supreme Court held that "§ 212(c) relief remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *Id.* at 326.

An alien is statutorily eligible to apply for § 212(c) relief if: (1) they held lawful domicile in the United States for at least seven years; (2) they are not excludable under INA sections addressing national security and international child abduction; and (3) for convictions entered between November 30, 1990, and September 30, 1996, they did not serve more than five years in prison for one or more aggravated felony offense(s). In addition to establishing statutory eligibility for a 212(c) waiver, the immigration judge must weigh positive and negative factors in order to determine whether the application merits a favorable exercise of discretion. *See Matter of Marin*, 16 I&N Dec. 581, 584–85 (BIA 1978). Discretion is not generally exercised favorably on behalf of an alien convicted of a serious criminal offense unless there is evidence of "unusual or outstanding" countervailing equities. *See Matter of Buscemi*, 19 I&N Dec. 628 (BIA 1988).

severe medical disabilities, including cerebral palsy, legal blindness, and quadriplegia. *See id.* at 14. The IJ then weighed the negative factors of the Defendant's child molestation conviction: elements of Defendant's testimony before the IJ as compared to Defendant's statements in the police report for the 1993 child molestation investigation; and a driving under the influence ("DUI") conviction, against the positive factors of: Defendant's long residency; his children which reside in the United States; his rehabilitation insofar as he completed parole and there was a lack of criminal arrest and conviction since parole was completed; Defendant's payment of taxes and Social Security; and Defendant's "long" but "spotty" record of employment. *Id.* at 15–16. The IJ noted that while the IJ had difficulties with the inconsistencies of the Defendant's testimony regarding the scope of the child molestation and his alcohol use, in general, the IJ found the testimonies of Defendant, his wife, the nurse who cared for Defendant's quadriplegic daughter, and Defendant's other 14-year-old daughter, Elizabeth—all of whom testified regarding Defendant's rehabilitation and his importance to the stability of his family—to be credible. *See id.* at 13; *see also id.* at 4–13, 16. The IJ also attributed "limited weight when determining credibility" to the 1993 police report, since it was presented in isolation without "anything else presented as to the creation of the document." *Id.* at 16. The IJ found that, overall, the positive factors outweighed the negative factors and Defendant merited a § 212(c) waiver.

      The Department of Homeland Security ("DHS"), to which the requisite responsibilities of the INS had been transferred in the intervening period between the INS' initiation of removal proceedings and the First IJ Order, appealed the IJ's decision to the BIA. First BIA Order 1. On November 15, 2004, the BIA sustained the appeal, reversed the IJ's order, and directed Defendant's removal to Mexico. *Id.* The BIA found that since it was undisputed that Defendant was statutorily eligible for a § 212(c) waiver, the sole question on appeal was whether the respondent merited a favorable exercise of discretion under the *Marin* test. *Id.* The BIA also found that the applicable standard of review was *de novo*. *Id.* (citing 8 C.F.R. § 1003.1(d)(3)(ii) ("The Board may review

questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges de novo.")).

    The BIA then found that the negative factors outweighed the positive factors, citing: Defendant's child molestation conviction; Defendant's previous convictions for grand theft auto, receipt of stolen property, and DUI; Defendant's violations of immigration laws prior to 1989; inconsistencies between Defendant's testimony before the IJ and the 1993 police report as to the nature of the child molestation; and inconsistencies between the testimony of Defendant and his wife before the IJ as to the extent of Defendant's alcohol use. *Id.* at 2–3. While the BIA did find that Defendant's wife was a lawful permanent resident, that he had four United States citizen children, including one who was "profoundly disabled" and one who had a learning disability, and that Defendant's removal would cause the family "emotional hardship," the BIA questioned the extent to which Defendant provided the family with support, given Defendant's absence from the home due to court orders stemming from the child molestation conviction; the fact that medical expenses for the quadriplegic child were paid for by the state of California; and Defendant's "irregular employment history." *Id.* at 3. The BIA found that Defendant "does not own substantial property, has not served in the armed forces, and does not appear to have been a person of any particular value to his community at large." *Id.* The BIA then questioned whether Defendant had truly been rehabilitated, finding that the inconsistencies in Defendant's testimony as to the nature of the child molestation and his alcohol use suggested "an effort on the [Defendant's] part to minimize the truly heinous nature of his conduct." *Id.*

    On December 13, 2004, Defendant filed a motion for reconsideration with the BIA, arguing that the BIA had failed to properly weigh the discretionary factors in reversing the IJ's decision. *See* Pl. Opp., Ex. 7 at 2. On December 14, 2004, Defendant petitioned for review of the BIA's decision by the Ninth Circuit and requested a stay of removal. *See* Ninth Circuit Petition, Def. Mot., Ex. D. Defendant argued that a stay was warranted since he had probable success on the merits of the appeal, because the BIA improperly

speculated as to the extent of Defendant's rehabilitation and wrongly weighed the discretionary factors. *See id.* at 4–11. On January 3, 2005, the Ninth Circuit granted the stay. *See* Def. Mot., Ex. 5.

On February 9, 2005, the BIA denied Defendant's motion to reconsider. *See* Feb. 9, 2005 BIA Order ("Second BIA Order"), Pl. Opp., Ex. 10. The BIA found that it had properly weighed the discretionary factors in its first order and that its first order was free from legal and factual error. *Id.* at 1. Instead of ordering the Defendant to be removed again, however, the BIA *sua sponte* reopened the removal proceedings and remanded the case to the IJ for the sole purpose of entering an order of removal against the respondent. *Id.* at 2. The BIA did so because in the intervening period between its first order on November 15, 2004, and its second order on February 9, 2005, the Ninth Circuit decided in *Molina-Camacho v. Ashcroft*, 393 F.3d 937, 941 (9th Cir. 2004), *overruled by Lolong v. Gonzales*, 484 F.3d 1172, 1177 (9th Cir. 2007),[2] that the BIA cannot issue a removal order in the first instance, but must remand to the IJ for the IJ to issue a removal order. *Id.*

On April 17, 2006, an IJ accordingly denied Defendant a § 212(c) waiver and directed his removal. *See* Apr. 17, 2006 IJ Order ("Second IJ Order"), Def. Mot., Ex. G. Defendant appealed to the BIA. *See* Pl. Opp., Ex. 12. In this appeal, Defendant did not raise the same issues as in Defendant's December 13, 2004 appeal to the BIA or the December 14, 2004 appeal to the Ninth Circuit, but instead, argued for the first time that Defendant was not removable because his 1993 child molestation conviction was not for an aggravated felony. *See id.* at 1–2.

On February 4, 2008, the BIA denied Defendant's appeal, rejecting Defendant's argument that his conviction was not an aggravated felony. *See* February 4, 2008 BIA Order ("Final BIA Order"), Def. Mot., Ex. H. Defendant did not petition the Ninth

---

[2] *Molina-Camacho* was later overruled in *Lolong*, which held that "where the IJ has previously determined that the alien is removable but grants cancellation of removal, the BIA's decision to reverse the cancellation of removal reinstates the initial finding of removability, which, under the statute, is effectively an order of removal." *Lolong*, 484 F.3d at 1178 (citing 8 U.S.C. § 1101(a)(47))).

Circuit to review this decision. On April 28, 2008, Defendant departed from the United States pursuant to the removal order. Pl. Opp., Ex. 13. On September 19, 2008, the Ninth Circuit denied Defendant's December 14, 2004 petition for review of the November 15, 2004 First BIA Order on the grounds that they lacked jurisdiction over the petition, because the First BIA Order was no longer a final order of removal once the BIA decided *sua sponte* in its February 9, 2005 Second BIA Order to reopen the case and remand to the IJ for the entry of a final order of removal. *Id.* at 2.

On April 18, 2015, Defendant was arrested while attempting to reenter the United States at the San Ysidro Port of Entry in California. Defendant was charged with three counts: (1) attempted reentry of a removed alien under 8 U.S.C. § 1326; (2) fraud or misuse of a visa, permit or other document in order to gain admission to the United States under 18 U.S.C. § 1546(a); and (3) aggravated identity theft under 18 U.S.C. § 1028(a). Indictment, ECF No. 1.

On October 16, 2015, Defendant filed the present motion to dismiss the first count, on the grounds that the underlying deportation was invalid. ECF No. 33. On October 30, 2015, the government responded. ECF No. 34. On November 4, 2015, Defendant replied. ECF No. 35.

## LEGAL STANDARD

For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government must establish that the defendant "left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (citing *United States v. Barajas–Alvarado*, 655 F.3d 1077, 1079 (9th Cir. 2011)). A defendant charged under § 1326 has a due process right "to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *Id.* (citing *United States v. Ubaldo–Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004)). To sustain a challenge to an indictment under § 1326, a defendant must demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings

1  "improperly deprived [him] of the opportunity for judicial review"; and (3) the removal
2  order was "fundamentally unfair." 8 U.S.C. § 1326(d) (codifying in part *United States v.*
3  *Mendoza-Lopez*, 481 U.S. 828 (holding that "a collateral challenge to the use of a
4  deportation proceeding as an element of a criminal offense must be permitted where the
5  deportation proceeding effectively eliminates the right of the alien to obtain judicial
6  review," *id.* at 839), *see United States v. Reyes–Bonilla*, 671 F.3d 1036, 1043 n.4 (9th
7  Cir. 2012)).

## DISCUSSION

Defendant advances two arguments as to why the underlying deportation can be collaterally attacked under § 1326(d): (1) Defendant's immigration attorney provided ineffective assistance of counsel ("IAC") by failing to perfect an appeal to the Ninth Circuit following the BIA's final February 4, 2008 order denying Defendant's appeal of the IJ's second order on April 17, 2006 directing Defendant's removal; and (2) the BIA erred as a matter of law in its first November 15, 2004 order reversing the IJ's grant of the § 212(c) waiver by reviewing the IJ's factual and credibility findings *de novo*. Because the Court finds that the Defendant's immigration attorney provided ineffective assistance of counsel, the Court **GRANTS** Defendant's motion to dismiss Count 1 of the indictment.

### I.  Ineffective assistance of counsel ("IAC")

Defendant argues that he was deprived of judicial review because his immigration attorney failed to file a petition for review to the Ninth Circuit following the BIA's final February 4, 2008 order. Def. Mot. 13. Defendant argues that his immigration attorney committed an error by believing that the Ninth Circuit still had jurisdiction to review his December 14, 2004 Petition, when in fact, that jurisdiction was extinguished by the February 9, 2005 Second BIA Order reopening the case. *Id.* As a result of this mistaken belief, Defendant contends, his immigration attorney did not file a petition for review to the Ninth Circuit following the Final BIA Order. By the time that the Ninth Circuit clarified that they did not have jurisdiction over the original petition on September 19,

2008, Defendant had already been deported five months earlier and it was too late to petition the Ninth Circuit to review the Final BIA Order.

Defendant submitted a declaration to the effect that during the course of the deportation proceedings, he intended to appeal his immigration case to the Ninth Circuit and believed that his attorney was doing so. Garcia-Morales Decl., ECF No. 33. In addition, Defendant contends that his immigration attorney's belief that the original Ninth Circuit Petition was still active was reflected in the fact that in Defendant's appeal of the April 17, 2006 Second IJ Order, Defendant did not raise the same issues as to the BIA's allegedly improper weighing of the discretionary factors as in Defendant's December 13, 2004 appeal to the BIA or the December 14, 2004 Ninth Circuit petition, but instead, argued for the first time that Defendant was not removable because his 1993 child molestation conviction was not for an aggravated felony. Def. Mot 17.

### A.   Administrative Exhaustion

Neither party disputes that Defendant satisfied the first prong of § 1326(d) by exhausting his administrative remedies by filing multiple appeals and motions to reconsider before the IJ and the BIA. *See* Def. Mot. 13, Pl. Opp. 18.

### B.   Deprivation of the Opportunity for Judicial Review

Deprivation of the opportunity for judicial review can be established by demonstrating IAC. *See United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1131 n.9 (9th Cir. 2013) (citing *United States v. Perez*, 330 F.3d 97, 101 (2d Cir. 2003)). In order for IAC to rise to the level of a Fifth Amendment due process violation and hence a deprivation of the opportunity for judicial review, the proceeding must have been "so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Maravilla Maravilla v. Ashcroft*, 381 F.3d 855, 858 (9th Cir. 2004) (quoting *Lopez v. INS*, 775 F.2d 1015, 1017 (9th Cir. 1985)) (internal quotation marks omitted). Such a claim requires two showings. Petitioners first must demonstrate "that counsel [failed to] perform with sufficient competence." *Id.* (quoting *Lin v. Ashcroft*, 377 F.3d 1014, 1027 (9th Cir. 2004) (alteration in original). Second, they must show that they were prejudiced

by their counsel's performance. *See id.* (quoting *Iturribarria v. INS*, 321 F.3d 889, 899–900 (9th Cir. 2003)) (internal quotation marks omitted).

The Ninth Circuit has found that failure to file a necessary appeal can constitute constitutionally deficient performance in the context of an immigration proceeding. *See Hernandez-Mendoza v. Gonzales*, 537 F.3d 976, 979 (9th Cir. 2007) (citing *Iturribarria v. INS*, 321 F.3d 889, 900 (9th Cir. 2003) (finding IAC when counsel failed to file application for cancellation of removal by date imposed by IJ); *Rodriguez-Lariz v. INS*, 282 F.3d 1218, 1226 (9th Cir. 2002) (finding IAC when counsel failed timely to file application for suspension of deportation); *Dearinger v. Reno*, 232 F.3d 1042, 1045 (9th Cir. 2000) (finding IAC when counsel failed to file appeal as promised, because petitioner "would have timely appealed but for her counsel's error"). Moreover, the Ninth Circuit has found that "[t]he failure to file a necessary document creates a presumption of prejudice." *See id.* (citing *Ray v. Gonzales*, 439 F.3d 582, 589 (9th Cir. 2006); *Singh v. Ashcroft*, 367 F.3d 1182, 1189 (9th Cir. 2004); *Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 826 (9th Cir. 2003); *Dearinger*, 232 F.3d at 1045). However, this presumption is rebutted where the petitioner lacks "plausible grounds for relief." *Id.* (citing *Rojas-Garcia*, 339 F.3d at 826).

Thus, the relevant inquiry is whether Defendant would have had "plausible grounds for relief" had he petitioned the Ninth Circuit for review of the Final BIA Order. In *Rojas-Garcia*, the Ninth Circuit found that the petitioner could not meet this standard where his counsel had failed to file a brief on appeal with the BIA, but there was no basis on appeal to make factual or legal challenges to the immigration judge's deportation order where the defendant "did not call any witnesses, he refused to testify on his own behalf, and he did not challenge the undisputed and credible testimony of government witnesses with personal knowledge of his [crimes]," and defendant's legal claims had no merit. *See* 339 F.3d at 826.

Defendant argues that he had plausible grounds for relief before the Ninth Circuit for two reasons: (1) the fact that the IJ granted him § 212(c) relief after weighing the

1    discretionary factors demonstrated that it was plausible that the Ninth Circuit would have
2    granted him that relief, Def. Mot. 25; and (2) the BIA committed a due process violation
3    by substituting their own factual findings for those of the IJ, Def. Reply 3. The
4    government responds that (1) the Ninth Circuit did not have jurisdiction to review the
5    BIA's denial of § 212 (c) relief because that denial was based on an exercise of
6    discretion, *see* Pl. Opp. 14, *see also id.* at 10–13; and (2) the BIA did not commit a due
7    process violation because they applied the correct standard of review, Pl. Opp. 14–18.
8    The Court will examine each argument in turn.

### 1.     The BIA's weighing of the discretionary factors

The government argues that the Ninth Circuit would not have had jurisdiction to review the BIA's weighing of the discretionary factors. *See* Pl. Opp. 14, *see also id.* at 10–13. Under 8 U.S.C. § 1252(a)(2) as amended by the REAL ID Act of 2005, no federal court has jurisdiction to review any denial of discretionary relief or final order of removal against an alien who is removable by reason of having committed an aggravated felony. *See* 8 U.S.C. § 1252(a)(2)(B)–(C); *see also* Judicial Review of Immigration Orders, 14A Fed. Prac. & Proc. Juris. § 3664 (4th ed.). This amendment was intended to make the repeal of the Article III courts' general habeas jurisdiction over orders of removal "absolutely unambiguous." *See* 14A Fed. Prac. & Proc. Juris. § 3664.

However, in order to avoid contravening the Supreme Court's ruling in *I.N.S. v. St. Cyr*, 533 U.S. 289, 300–01 (2001) that the Suspension Clause would be implicated by a preclusion of the federal courts' ability to review "pure questions of law" raised by petitions for review, subsection (D) of the same statute goes on to state that neither subsection (B) nor (C) precludes the federal courts from reviewing "constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." *See* 8 U.S.C. § 1252(a)(2)(D); *see also Martinez-Rosas v. Gonzales*, 424 F.3d 926, 930 (9th Cir. 2005); 14A Fed. Prac. & Proc. Juris. § 3664. Under § 1252(a)(2)(D), a petitioner must allege at least a "colorable" constitutional or legal violation. *See Martinez-Rosas*, 424 F.3d at 930. "To be colorable in this context, the alleged violation

need not be substantial, but the claim must have some possible validity." *Id.* (citing *Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001)).

Accordingly, the government argues that Defendant has not demonstrated that his appeal of the Final BIA Order would have centered on a colorable constitutional claim or question of law. "At best, Defendant's appeal would have centered on the BIA's consideration and evaluation of the discretionary factors, which does not amount to a legal or constitutional challenge that would have invoked the Ninth Circuit's jurisdiction." Pl. Opp. 12. The Court agrees that under the terms of 8 U.S.C. § 1252(a), the Ninth Circuit would have lacked jurisdiction over any challenge brought by the Defendant that centered on the BIA's improper application of the *Marin* test, since by that test's very terms, the grant of a § 212(c) waiver is an exercise in "discretion." *See Bazua-Cota v. Gonzales*, 466 F.3d 747, 749 (9th Cir. 2006) (per curiam) (holding that petitioner's argument that the BIA and IJ violated his right to due process by failing to properly weigh the equities and hardship before denying his application for adjustment of status was an abuse of discretion challenge recharacterized as an alleged due process violation, which does not constitute a colorable constitutional claim); *Martinez-Rosas*, 424 F.3d at 930 (holding that a petition for review that fails to present a colorable claim "is nothing more than an argument that the IJ abused his discretion" in determining that the petitioner "did not meet the requirement of 'exceptional and extremely unusual hardship,'" which is a matter over which the Ninth Circuit does not have jurisdiction); *Torres-Aguilar*, 246 F.3d at 1271  ("[A] petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb . . . .")).

### 2. The BIA's standard of review

Defendant argues that even if the Ninth Circuit could not have reviewed the BIA's weighing of the discretionary factors, Defendant would also have sought to have the Ninth Circuit review the claim that the BIA applied the wrong standard of review in its First BIA Order. Def. Reply 3. It is well-established that whether the BIA has applied the

correct standard of review is a question of law. *See Rodriguez v. Holder*, 683 F.3d 1164, 1169–70 (9th Cir. 2012) (citing *Afridi v. Gonzales*, 442 F.3d 1212, 1218 (9th Cir. 2006), *overruled on other grounds by Estrada–Espinoza v. Mukasey*, 546 F.3d 1147, 1160 n.15 (9th Cir.2008) (en banc); *Arteaga v. I.N.S.*, 836 F.2d 1227, 1228 (9th Cir. 1988), *abrogated on other grounds by I.N.S. v. Elias–Zacarias*, 502 U.S. 478 (1992)). Thus, the Ninth Circuit would have had jurisdiction over a petition on this ground.

The inquiry before the Court is thus whether the Defendant's standard of review claim would have constituted a "plausible claim for relief" such that Defendant counsel's failure to file a petition for review before the Ninth Circuit featuring that claim caused the Defendant prejudice. Under 8 C.F.R. § 1003.1(d)(3)(i), the BIA is barred from "engag[ing] in de novo review of findings of fact determined by an immigration judge. Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous." Defendant argues that the BIA applied the wrong standard of review by substituting their own factual findings and credibility determinations for those of the IJ. Def. Mot. 20. The Defendant argues that the BIA "explicitly reviewed the case de novo and at no point in the opinion . . . engage[s] in a clear error analysis." Def. Mot. 21. Specifically, Defendant argues that the BIA made four different factual or credibility determinations than the IJ by: (1) crediting the police report over the Defendant's testimony before the IJ when the IJ explicitly stated that he was giving the police report "limited weight"; (2) concluding that Defendant was not "truly rehabilitated" despite the IJ's finding otherwise; (3) finding that Defendant "does not appear to have been a person of any particular value in his community at large" when the IJ had found the testimony of his family members and the nurse as to his importance to his family to be credible; and (4) finding that "it does not appear that the respondent provides much in the way of financial support for his wife and children" when the IJ had found that Defendant worked in construction, contributed to the household income of $40,000, has always filed his taxes, and has worked since 1975. Def. Mot. 21–24.

12

1    The government responds that the BIA did not make different findings of fact or
2 credibility in any of these areas. Pl. Opp. 15. First, the government argues that the IJ
3 noted in the record that the police report "provided more information" as to what took
4 place in 1993 leading up to the Defendant's conviction for child molestation, including
5 that the police report recounted more than one instance of sexual abuse, and that the IJ
6 also stated that he had "difficulties" with the Defendant's testimony and "problems with
7 [his] explanation of his involvement in the incidents leading up to the conviction." Pl.
8 Opp. 16 (citing First IJ Order 11, 17–18). Thus, the government argues, the BIA did not
9 make any new factual findings as to Defendant's criminal history or discredit
10 Defendant's credibility more than the IJ did in his decision, but simply weighed the
11 discretionary factors differently than the IJ did, which it permissibly did *de novo* since
12 grant of a § 212 (c) waiver is an exercise in discretion under 8 C.F.R. § 1003.1(d)(3)(ii).
13 Second, the government argues that the BIA's findings as to rehabilitation, the
14 Defendant's value to the larger community, and Defendant's scale of financial
15 contribution to the family were not factual findings, but a reweighing of the facts found
16 by the IJ. *See* Def. Mot. 16–18.

17    The Court agrees with the government that the third and fourth BIA determinations
18 highlighted by Defendant do not constitute impermissible new factual or credibility
19 determinations made by the BIA. The BIA's third finding that Defendant "does not
20 appear to have been a person of any particular value in his community at large" does not
21 necessarily contradict the IJ's finding that Defendant's family and associates felt he was
22 important to his family, since Defendant could both be of "good character" and
23 "emotional" importance to his family, as the BIA found, and simultaneously not a figure
24 of great importance to the larger community. And the BIA's fourth finding that "it does
25 not appear that the respondent provides much in the way of financial support for his wife
26 and children" does not necessarily contradict the IJ's findings that Defendant worked in
27 construction, contributed to the household income of $40,000, has always filed his taxes,
28 and has worked since 1975. As the BIA noted, the IJ also found that Defendant only

1 made about $10 an hour, that the state was paying for the medical care of his quadriplegic
2 daughter and that the family would stay in the United States even if he was deported in
3 order to continue to receive that state support, and that his employment history was
4 "spotty." *See* First IJ Order 7, 13, 17. The BIA could well infer from those facts that
5 Defendant did not provide significant financial support to his family.

6 However, the Court finds that with regards to the first and second BIA
7 determinations, the BIA does appear to have improperly made new credibility
8 determinations *de novo*, without explicitly stating whether or not the IJ had committed
9 clear error. The BIA's first finding that "significant negative factors militate against a
10 favorable exercise of discretion in this case" and the BIA's second finding that Defendant
11 was not "truly rehabilitated" were both heavily reliant on the 1993 police report. *See* First
12 BIA Order 2–3. In describing the 1993 conviction, the BIA credited the police report's
13 description of Defendant's criminal conduct, which involved multiple allegations of
14 sexual misconduct on the part of Defendant, over Defendant's testimony before the IJ
15 that the conviction resulted from a "single incident" of molestation which did not involve
16 sexual intercourse. *See* First BIA Order 2. In addition, in evaluating whether or not
17 Defendant was rehabilitated, the BIA stated that Defendant had failed to "adequately
18 explain" the discrepancies between his testimony and the police report; that "the
19 respondent provided to the police an account of his activities that closely resembled the
20 account provided by the victim"; and that the discrepancies in testimony "suggested to
21 [the BIA] an effort on the respondent's part to minimize the truly heinous nature of his
22 conduct." *See* First BIA Order 3.

23 By contrast, while the IJ also considered the discrepancies in the testimony
24 identified by the BIA, the IJ ultimately concluded that the 1993 police report should be
25 given "limited weight when determining credibility" "absent anything else presented as
26 to the creation of the document." First IJ Order 16. Moreover, the IJ found that some of
27 the discrepancies could be attributed to the facts that Defendant was a "man of very
28 limited education and at the time, limited language ability," and that Defendant "had a

problem with alcohol during the same period of time." *Id.*

Therefore, reviewing the First BIA Order, the Court cannot avoid the conclusion that the BIA's reversal relied upon different determinations of the credibility of the 1993 police report as compared to Defendant's testimony before the IJ than those made by the IJ. And indeed, as the Ninth Circuit has noted, where credibility determinations are at issue, "even greater deference" should be afforded to an IJ's factual findings, "for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Rodriguez*, 683 F.3d at 1171 (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985)) (internal quotation marks omitted) ("IJs hear witnesses and determine the credibility of evidence. The BIA reviews a paper record, devoid of the nuances of weighing evidence first hand. The IJ is thus in a better position to make factual determinations than the BIA acting in an appellate capacity." *Id.* at 1171–72 (quoting *Turkson v. Holder*, 667 F.3d 523, 527 (4th Cir. 2012) (internal quotation marks omitted))). The Court thus finds that Defendant's argument that the BIA applied the wrong standard of review would have stated a "plausible claim for relief" before the Ninth Circuit, and that therefore, he was prejudiced by his immigration attorney's IAC.[3]

---

[3] Although parties do not raise it, the Court notes that a possible issue with Defendant's argument that the claim that the BIA applied the wrong standard of review would have stated a "plausible claim for relief" is that it is less than clear that Defendant *would have* raised this argument had he appealed the Final BIA Order in 2008. In *Rojas-Garcia*, the Ninth Circuit found that the petitioner could not meet the plausibility standard where his counsel had failed to file a brief on appeal with the BIA, but there was no basis on appeal to make factual or legal challenges to the immigration judge's deportation order where the defendant "did not call any witnesses, he refused to testify on his own behalf, and he did not challenge the undisputed and credible testimony of government witnesses with personal knowledge of his [crimes]," and defendant's legal claims had no merit. *See* 339 F.3d at 826. Here, Defendant neither raised the standard of review argument in his December 13, 2004 motion for reconsideration of the First BIA Order, nor in his December 14, 2004 petition for review of the First BIA Order to the Ninth Circuit, nor in his appeal of the April 17, 2006 IJ Order.

On the other hand, Defendant contested the removal proceedings with far greater vigor than the defendant in *Rojas-Garcia*, by calling multiple witnesses, testifying on his own behalf, and contesting the validity of the police report. As discussed *supra*, Defendant's legal claims have some merit. And as mentioned above, Defendant submitted a declaration to the effect that during the course of the deportation proceedings, he intended to appeal his immigration case to the Ninth Circuit and believed


### C. Fundamental Unfairness

To satisfy the third prong—that the order was fundamentally unfair—the defendant bears the burden of establishing both that the "deportation proceeding violate[d] [his] due process rights" and that the violation caused prejudice. *United States v. Raya-Vaca*, 771 F.3d at 1201–02 (citing *United States v. Leon–Leon*, 35 F.3d 1428, 1431 (9th Cir. 1994)). As discussed above in Part I.B, a finding that IAC amounts to a deprivation of the opportunity for judicial review necessarily entails both a finding that the Defendant's due process rights were violated, and that the violation caused prejudice. *See Maravilla Maravilla*, 381 F.3d at 858. Thus, where an IAC claim serves as the basis for a collateral attack on an underlying deportation order under § 1326(d), the deprivation of the opportunity for judicial review and fundamental unfairness prongs largely overlap. *See id.*; *see also Ubaldo-Figueroa*, 364 F.3d at 1050 (noting that a defendant seeking § 1326(d) relief "does not have to show that he actually would have been granted relief[, but i]nstead, he must only show that he had a 'plausible' ground for relief from deportation"). Thus, the Court again finds that the Defendant counsel's IAC amounted to a due process violation that caused prejudice to the Defendant, for the same reasons as identified in Part I.B.[4]

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss Count 1 of the indictment, ECF No. 33.

---

that his attorney was doing so. Garcia-Morales Decl., ECF No. 33. Thus, the Court finds that absent fuller briefing on this point, the Defendant satisfies the plausibility standard for establishing that he was prejudiced by his attorney's IAC.

[4]     Since the Court finds that Defendant counsel's IAC serves as a sufficient basis to grant Defendant's motion, the Court need not address Defendant's second argument that the BIA's application of the wrong standard of review in the First BIA Order served as an independent ground for granting his motion to dismiss. *See* Def. Mot. 18. However, the Court observes that because the parties only addressed whether the BIA's application of the wrong standard of review would be fundamentally unfair under § 1326(d)(3), it is unclear how the BIA's application of the wrong standard of review, standing alone, would have also satisfied § 1326(d)(2)'s requirement of a deprivation of the opportunity for judicial review.

**IT IS SO ORDERED.**

Dated: December 8, 2015

Hon. Gonzalo P. Curiel
United States District Judge